**In re R. Peter DECATO, Esq.**

[719 A.2d 390]

No. 98-138

June 18, 1998. Pursuant to the recommendation of the Professional Conduct Board filed April 7, 1998, and approval thereof, it is hereby ordered that R. Peter Decato, Esq. be publicly reprimanded for

---

the reasons set forth in the board's report attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

## REPORT TO THE VERMONT SUPREME COURT

This matter was presented to us by stipulated facts, which we adopt as our own and publish below.

The parties also submitted a joint recommendation to the Board as to what conclusions of law should be drawn from these facts and what sanction should be imposed. Respondent submitted a waiver of certain procedural rights, including the right to withdraw the stipulated facts in the event that the recommended sanction was not imposed.

Bar counsel and respondent appeared before us on February 6 and presented oral argument in support of the joint recommendation of an admonition.

Upon consideration of the documents filed and the oral argument presented, we adopt the stipulated facts and the conclusions of law. We cannot accept, however, the recommended sanction. For reasons set forth below, we recommend that a public reprimand be imposed.

### FINDINGS OF FACT

1. Mr. Decato was admitted to the bar of Vermont on September 17, 1985 and is currently on active status. He was admitted to the bars of New Hampshire and Massachusetts in 1973. In the summer of 1986, he undertook representation of one Stuart Kellogg.

2. Stuart Kellogg was a truck driver for Noel Vincent Trucking. He operated a large truck that picked up dumpsters and off-loaded them. On April 16, 1986, while raising a dumpster onto his truck for rubbish deposit, some pins in the truck's lifting gear broke. Proper safety restraints had not been installed on the truck, and the dumpster was free to swing around, out of control. Mr. Kellogg was pinned next to a fence and could not

escape the direct hit to his head by the six-ton dumpster. He was knocked unconscious and suffered severe head and facial injuries.

3. In July 1986, Mr. Kellogg consulted Attorney William Whitten regarding workers' compensation benefits for this accident. Mr. Whitten referred Mr. Kellogg to Mr. Decato for potential civil actions. Mr. Kellogg retained Mr. Decato on a contingency fee basis. Mr. Whitten continued his involvement in the workers' compensation issues.

4. Mr. Decato identified three potential defendants for a civil action. First was Stanley Boyce, the company supervisor of employees and equipment. He was in charge of maintaining and overseeing the truck fleet. Second was Robert MacNeil, the owner of Noel Vincent Trucking, the corporation which employed Mr. Kellogg. Third was "Loadmaster," a company whose name was located on the truck. Mr. Decato inferred that "Loadmaster" was the manufacturer of the truck, or packer, with defective lifting gear and improper safety restraints.

5. Mr. Decato filed suit against all three defendants on April 8, 1987 in Windsor County Superior Court. The cause of action against Loadmaster was a product liability claim for improperly designing and manufacturing the packer. The cause of action against both Mr. MacNeil and Mr. Boyce was a claim sounding in negligence for failing to exercise reasonable care in the supervision and maintenance of the truck.

6. As owner of the corporation and employer of Mr. Kellogg, Mr. MacNeil would not ordinarily be liable for negligence in a work-related injury "since he would be entitled to all the [workers' compensation] statutory defenses of an employer." *Steele v. Eaton*, 130 Vt. 1, 4, 285 A.2d 749, 751 (1971). A suit against an owner/employer could only successfully be based on his/her liability as a co-employee. *Id.* Mr. Decato made such a claim in the complaint.

Claim Against Defendant Loadmaster

7. On August 5, 1987, defendant Loadmaster filed a request for admissions, averring that it did not design or manufacture the packer in question and that another entity, Hagen Industries, Inc., or one of its two subsidiaries, was the manufacturer.

8. On December 17, 1987, defendant MacNeil admitted that these allegations were true. On behalf of the plaintiff, respondent did not respond to Loadmaster's request for admissions.

9. On December 24, 1987, in response to defendant MacNeil's interrogatories, defendant Loadmaster more fully explained its denial of responsibility for the packer in question and its belief that Hagen Industries, Inc. or one of its two subsidiaries was the responsible party.

10. On December 28, 1987, defendant Loadmaster renewed its previously-filed motion for judgment on the pleadings. The court granted Loadmaster's motion on April 12, 1988, by which time Mr. Decato had still not responded to the request for admissions.

11. In reaction to the information from Loadmaster about possible corporate responsibility, Mr. Decato determined by telephone calls to the Virginia and New York Secretaries of State that the two subsidiary companies had dissolved, but that the parent corporation, Hagen Industries, Inc. was in good standing in New York. Mr. Decato did no further inquiry concerning the corporate manufacturer of the defective packer.

Claim Against Defendant MacNeil

12. Mr. Kellogg had informed Mr. Decato that Mr. MacNeil had been actively involved in all aspects of company management — that he was a micromanager.

13. Around December 15, 1987, defendant MacNeil filed a motion for summary judgment. He claimed no direct negligence to the plaintiff, and he claimed

employer protection under the exclusive remedy provision of the workers' compensation statute. Accompanying the motion was an affidavit of Mr. MacNeil denying any part in the maintenance of the truck fleet.

14. There was a factual dispute between Mr. Kellogg's description of Mr. MacNeil's duties and Mr. MacNeil's description of his duties.

15. Mr. Decato did not depose Mr. MacNeil or any other person, nor did Mr. Decato propound interrogatories to Mr. MacNeil or Mr. Boyce. Mr. Decato did not obtain a counteraffidavit from Mr. Kellogg nor did he oppose the motion for summary judgment.

16. Mr. Decato did not believe he could rebut the assertions of Mr. MacNeil that he was not involved in the day-to-day maintenance operations.

17. Summary judgment was granted for defendant MacNeil on April 12, 1988.

### Claim Against Defendant Boyce

18. By agreement of the parties for late filing, defendant Boyce filed an answer to the complaint on March 2, 1988. He denied liability.

19. Mr. Kellogg·was a friend and colleague of Mr. Boyce, who had few resources. Mr. Kellogg was inclined to proceed against Mr. Boyce if the company's insurance policy provided coverage. The company denied coverage, and the company policy did not include employees within the definition of those insured.

20. On July 28, 1988, attorney for Mr. Boyce filed the stipulation to dismiss him from the lawsuit, signed by Mr. Decato.

### Post-Dismissal Activity

21. After the dismissal of defendants Loadmaster and MacNeil, Mr. Decato advised Mr. Kellogg that if he wanted to pursue a claim against Hagen Industries, Inc., he should retain the services of another attorney.

22. In 1993, Mr. Kellogg conferred with another attorney about his SSI benefits. Upon learning of the failed lawsuit, the attorney referred Mr. Kellogg to Attorney Michael Hanley. Mr. Hanley pursued Mr. Decato in a malpractice action. It was mediated to Mr. Kellogg's satisfaction by the end of 1995.

23. Bar counsel received a letter of complaint from Mr. Kellogg on October 27, 1993. It concerned solely the issue of Mr. Decato's failure to turn over the file to Mr. Hanley, which Mr. Hanley had initially requested on May 12, 1993.* Bar counsel sent Mr. Kellogg's letter of complaint to Mr. Decato on November 9, 1993. Upon receipt, November 10, 1993, Mr. Decato immediately forwarded the file to Mr. Hanley.

24. Mr. Decato's state of mind was one of negligence.

25. Mr. Decato has two prior disciplinary sanctions.

* A private admonition in PCB File No. 87.33, issued on November 12, 1987; and

* A private admonition in PCB File No. 91.49, issued on November 6, 1992.

26. Mr. Kellogg was vulnerable.

27. Mr. Decato has, and at the time had, substantial experience in the practice of law.

28. Mr. Decato had no dishonest or selfish motive.

29. Mr. Decato has cooperated fully in the disciplinary proceedings.

30. There has been a delay in the disciplinary proceedings through no fault of Mr. Decato.

31. The events at issue occurred ten years ago.

32. Mr. Decato was cooperative in mediating the malpractice action against him.

33. One of the prior disciplinary offenses is remote in time.

---

* The delay in producing the file was largely attributable to persons other than Mr. Decato.

34. Bar counsel received only one complaint against Mr. Decato since this case has been pending. The complaint letter in PCB File No. 95.55 was filed eight months after the complaint in the case at bar. It was dismissed as meritless.

## CONCLUSIONS OF LAW

Once retained, and especially after having filed a client's claim in court, an attorney has the responsibility to pursue the facts and the law diligently to preserve the client's rights and interests. Respondent here failed to fulfil that duty to his client in at least three respects:

1) he did not pursue a claim against the proper corporate defendant or assist his client in locating substitute counsel to handle the claim;

2) he did not research the legal basis for his claim against the owner/co-employee, Mr. MacNeil, nor did he oppose the motion for summary judgment; and

3) he did not investigate the facts of the case or the available evidence to ascertain the accuracy of Mr. MacNeil's claim that he was not actively involved in management or maintenance of the company as a co-worker.

Respondent's conduct in this case evidences a lack of attention to a very significant case. He had a client who was severely injured by defective equipment. One would expect a personal injury lawyer to vigorously pursue the matter. Yet respondent here did not zealously represent his client's interests.

It is as though respondent went through the rudimentary preliminaries necessary to filing a law suit and then lost interest when he encountered a defense. The loss of interest is unexplained by the stipulation. Whatever the reason for his conduct, the least respondent could have done and should have done for Mr. Kellogg was to find him substitute counsel who would have given the case the attention it deserved.

We conclude the respondent violated DR 6-101 by failing to act competently. His preparation was inadequate in violation of DR 6-101(A)(2), and his abandonment of the cause of action against the manufacturer constituted neglect in violation of DR 6-101(A)(3).

## SANCTIONS

In recommending a public reprimand in this case, we apply § 3.0 of the ABA Standards for Imposing Lawyer Sanctions. We consider the duty violated, the lawyer's mental state, the potential or actual injury, and any aggravating or mitigating factors.

The duty violated is the duty of diligence owed to the client. The mental state is one of negligence. The appropriate standard to apply is 4.43, which states: "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."

Mr. Kellogg was injured in that he lost his opportunity to pursue an action directly against those responsible for his injury. The only reason he received any financial recovery is because a problem with SSI benefits brought his situation to the attention of another attorney who recognized a legal malpractice case. But for this, Mr. Kellogg may have received no recovery at all. The recovery he received through the legal malpractice claim came almost ten years after the accident.

We find that neither the aggravating nor mitigating factors move this case toward suspension or admonition.

In aggravation, we find the following factors present under Standard 9.22:

(a) prior disciplinary offenses;

(b) vulnerability of victim; and

(c) substantial experience in the practice of law.

In mitigation, we find the following factors present under Standard 9.32:

(a) absence of a dishonest or selfish motive; and

(b) full co-operation with these disciplinary proceedings.

Respondent and bar counsel have urged that other factors be considered as mitigating factors, i.e., co-operation in settling the malpractice case, a lack of other complaints received, the remoteness of the events which led to this disciplinary action, and the remoteness of the prior sanctions. We decline to do so.

Given that the malpractice case was settled some two years after this disciplinary investigation was initiated, we cannot conclude that this was a "timely good faith effort to make restitution or rectify consequences of misconduct" as described at Standard 9.32(d). See Factor 9.4(a) and corresponding Commentary.

Neither remoteness of the events which led to discipline nor a lack of other complaints are mitigating factors recognized by this Board, the Vermont Supreme Court, or the ABA Lawyer Standards. We are unaware of any policy reason which would justify their adoption in this case.

The remoteness of the prior offense is also not a mitigating factor here. One of respondent's prior offenses occurred in 1987, the same year in which he neglected Mr. Kellogg. It would seem to us that, if anything, it is an aggravating factor for an attorney to engage in misconduct while engaged in other disciplinary proceedings. Be that as it may, it is certainly not a mitigating factor.

Finally, as to the stipulated delay in the disciplinary proceedings, while we note it was not attributable to respondent, it was not of sufficient length to render it a mitigating circumstance under the particular facts present here.

## CONCLUSION

We recommend to the Supreme Court that it publicly reprimand respondent for neglecting Mr. Kellogg's case, in violation of DR 6-101.

Motion for reconsideration denied June 26, 1998.